ALLAN H. SCHUMANN, Plaintiff-Appellant, v. IPCO HOSPITAL SUPPLY CORPORATION et al., Defendants-Appellees.

First District (1st Division)    No. 80-907

Opinion filed March 9, 1981.—Rehearing denied April 6, 1981.

Richard G. Kinney, of Kinney & Niblack, of Chicago, for appellant.

Sidney Neuman and Allan J. Sternstein, both of Neuman, Williams, Anderson & Olson, and David L. Passman, of Baum, Glick & Wertheimer Associates, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

This action for alleged misappropriation of a trade secret was terminated by entry of a summary judgment in favor of IPCO Hospital Supply Corporation, Nobilium Processing Company of Chicago, Inc., and Nobilium Products, Inc., (defendants). Allan H. Schumann (plaintiff) has appealed.

A threshold question results from the motion by defendants for leave to file in this court a two-volume supplement to the record. Supplemental volume I contains pages C-663 to C-1209 and volume II, pages 1210 to and including 1679. This supplemental record includes matters and documents not previously transmitted to this court. In the true litigious spirit, defendants filed a motion for leave to file this supplemental record; plaintiff filed objections to the motion; defendants filed a reply to the objection of plaintiff; and plaintiff filed an answer to the reply. We have taken the motion with the case.

On November 25, 1980, after hearing argument of counsel, the trial judge entered an order directing the clerk of the circuit court to certify this supplemental material to this court. This order specified the depositions of Robert Gallagher, Earl Gough (two depositions), John Hammerle, and Joe J. Simmons. The order also included a copy of the deposition of plaintiff and a post-hearing memorandum and affidavit served by plaintiff on February 25, 1980. The trial court added the following to the order:

"This Order does not reach the question of whether the transcripts were properly filed."

It is the theory of defendants that these additional matters were tendered to the trial judge in open court, were before him, and were considered by the court and by both counsel when the motion for summary judgment was heard. It is plaintiff's theory these items were not physically filed with the clerk of the circuit court at the time of the entry of the final order for summary judgment and, therefore, could not be considered by this court. Before entering this order, the trial judge stated he relied on these matters, which were filed with him, and also stated, "Maybe somebody neglected to put a stamp on it."

The trial court considered the entire matter as a motion under Supreme Court Rule 329 which permits a record to be supplemented "to present fully and fairly the questions involved * * *." Omissions from the record may be corrected "by the trial court, either before or after the record is transmitted to the reviewing court, or by the reviewing court." Ill. Rev. Stat. 1979, ch. 110A, par. 329.

The disputed depositions in the contested supplemental record were all available to plaintiff. All were eventually filed with and certified by the clerk of the circuit court. In addition, the depositions show affirmatively that counsel for plaintiff was present at the taking thereof. In our opinion, these portions of the record are squarely within the permissive intent of Rule 329. We have thus concluded these matters above detailed were all tendered to the trial judge and considered by him in passing upon the motion for summary judgment. For example, volume I of this supplemental record contains the original motion of defendants for summary judgment and a discovery deposition of plaintiff taken by defendants. The record shows that this motion was lodged with the trial court on January 3, 1980. It had previously been served upon counsel for defendant. However, the filing mark of the clerk of the circuit court was not placed thereon until November 25, 1980. As a part of said motion, there is a memorandum containing 36 pages which refers to the materials and depositions in support of the motion for summary judgment.

Plaintiff urges *Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468, *appeal denied* (1978), 71 Ill. 2d 607, is "controlling" here. We disagree. The "Leadingham" deposition there involved was taken in a different piece of litigation involving other parties. It was never filed in that other case. The court, therefore, pointed out the deposition was "improperly acquired" and "totally improper." (59 Ill. App. 3d 429, 435-36.) The depositions in the instant case were all properly taken and signed, were presented to the trial judge in open court, and were considered by him in passing on the motion for summary judgment. The filing of these matters was completed when they were tendered to the

trial judge in open court. The application of the filing marks by the clerk of the trial court was a ministerial matter.

■■ We, therefore, hold the various materials described in the order of the trial judge are properly before this court under the authority of Rule 329 above quoted. Accordingly, defendants are granted leave to file their tendered second supplemental record in two volumes.

We are constrained to add that we agree with the point made by plaintiff that counsel for defendants were guilty of delay in taking the necessary steps to properly present the entire record. However, this delay should not be charged against the defendants.

The merits of the situation before us revolve about a device to be used with the anchoring of artificial teeth. The product is described as a dental hinge post or simply a dental post. The trial judge referred to the alleged trade secret as involving "the post used in the latch and hinge mechanisms of a dental appliance."

In plaintiff's amended complaint he alleged he had developed a secret and confidential design for dental hinge posts upon which to form a removable partial denture. This design was described as "secret and confidential." It is alleged that in the spring of 1970, plaintiff was contacted by an agent of the defendants who expressed interest in the device. At that time an oral agreement was made between plaintiff and persons acting for the defendants whereby plaintiff would disclose to defendants the confidential design and techinque for making the dental posts in consideration of payment to plaintiff of money "proportional to the value of Dental Posts product to plaintiff."

It is defendants' theory that long before this alleged disclosure to defendants, plaintiff himself had disclosed the so-called trade secret to a number of other persons.

Apparently, plaintiff is highly skilled and experienced in the fabrication of this type of product. About 1966, plaintiff was first employed in a dental laboratory owned by Earl Gough, his former brother-in-law. Plaintiff spoke to Gough about the building of such an appliance. They worked together in fabricating the device. In Gough's deposition he testified he spoke about the device and its use and showed "several dozen people" how to make the particular type of appliance here involved. Gough discussed this type of appliance in dental clinics and lectures.

Plaintiff urges in his brief the Gough deposition was not signed by the deponent and the signature was not waived. We find an express waiver of signature of this deposition by the attorney for the deponent and a certification by the reporter "[t]hat the reading and signing of said deposition was waived * * *."

In plaintiff's own deposition, he pointed out that the appliance in question had the advantage of being a simple cylindrical prefabricated

post. Plaintiff described the device as having "simplicity" because it consists of a perfectly round symmetrical cylinder. Defendants attached to their motion for summary judgment a patent issued on May 25, 1915, which defendants describe as also being a simple and perfectly round cylindrical pin. Defendants take the position that posts of this type were widely used in dental appliances long before alleged disclosure of the matter to defendants by plaintiff.

There is also an affidavit by Joe Luckow that about 1969 or early 1970 he learned about the use of the same type of dental posts. He stated this device was generally described in a "Simmons U.S. patent." Luckow spoke to Gough about the matter. Gough explained to Luckow the design and use of this type of dental posts. Gough did not state this was confidential information and affiant did not so regard it. Therefore, Luckow himself made appliances which were "substantially identical." Later Luckow told other persons about this type of appliance. Luckow also stated this design of the mechanism and the method it used "were identical" to certain similar devices set forth in a manual issued by one of the defendants.

Approximately 10 days later Luckow signed an additional affidavit. He stated the device explained to him by Gough was not identical to the device pictured in the manual of one of the defendants. Luckow also stated he would not then currently sign the former affidavit without first correcting it as indicated. However, shortly more than one month later Luckow signed a supplemental affidavit. He stated therein that the only errors he found in the first affidavit were that there actually was a difference between the dental posts which he referred to as "my prototype" which he had fabricated as suggested by Gough and the post shown in the "Nobilium Manual" issued by one of the defendants. Luckow proceeded to elucidate these differences. He added again the statement that "[t]he post which I used prior to April 1970 in the hinge mechanism and the post I used in the latch mechanism of the prototype shown in Exhicit [sic] C attached to the first affidavit [a reproduction of Patent No. 3,271,858 issued September 13, 1966, to J. J. Simmons] were identical to each other." Luckow also stated the posts in his prototype were identical to a similar device which his initial employer sold to a dentist for use of a patient.

It does not seem to us that these three affidavits require a great deal of discussion. We gather therefrom simply that there must necessarily have been a close similarity between the device originally fabricated by plaintiff, the device explained by Gough to the affiant Luckow, the device then created by Luckow himself, and the Simmons patent.

Plaintiff's own deposition shows he made and thereafter sold about 12 of these same appliances to firms in the dental trade all prior to May

1970. Plaintiff also testified he showed a man named Jerry Wakitsch one of the appliances, explained it to him as an "innovation" which plaintiff "planned to exploit," and suggested it might perhaps be part of a patent application. Plaintiff filed an affidavit by Jerry Wakitsch. The deponent stated he and plaintiff examined "a dental appliance having a hinged labial bar with latch." This was in 1968. However, he could not determine various facts about the device and could not have produced it. He treated this information as being "in confidence."

Some 10 years prior to the initial 1970 contract between the parties, a similar dental appliance was made by a dental technician named John Hammerle. He also employed the same type of symmetrical, round cylindrical post. Hammerle's deposition shows he displayed his dental appliance to dentists, periodontists, and other interested persons, including a former officer and an employee of one of the defendant corporations.

In a deposition Dr. Joe Simmons testified he is patentee of a so-called "swing-lock" device. He sold prefabricated cylindrical posts for use with his device. He described his product as being "almost identical" to plaintiff's mechanism. He first used this device in 1963 or even 1962. He also stated the disclosures of this product were made to "close to a hundred thousand technicians and dentists" in lectures and clinics staged throughout the United States and Europe. Also, he testified the swing-lock device was disclosed by him to the public in an article he wrote for the Texas Dental Journal in 1963.

■■ As stated and restated on so many occasions, summary judgment should be entered in a situation where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57(3); *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 320, 396 N.E.2d 524, and additional authorities there cited.) Unsupported allegations in plaintiff's complaint cannot raise issues where affidavits and depositions are to the contrary. *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 381, 313 N.E.2d 457.

■■ The issue before us is whether the principle of manufacture and operation of the dental appliance here involved was actually a trade secret at the time of the alleged disclosure thereof by plaintiff to defendants or whether prior to that event the information had been imparted to others so that it had passed into the public domain. As recently pointed out by the supreme court, the protection of trade secrets is a salutary objective of the law for purposes of "(1) encouragement of invention and (2) maintenance of commercial morality." (*Brunswick Corp. v. Outboard Marine Co.* (1980), 79 Ill. 2d 475, 478, 404 N.E.2d 205.) Consequently, we are constrained to make a careful examination of the

applicable cases to determine the legal effect of disclosure of the alleged secret prior to the contact between the parties hereto.

■■ The frequently cited case of *Bimba Mfg. Co. v. Starz Cylinder Co.* (1969), 119 Ill. App. 2d 251, 256 N.E.2d 357, *appeal denied* (1970), 44 Ill. 2d 583, is an excellent starting point. The trial court there awarded damages to plaintiff on the theory defendants had conspired to steal trade secrets from plaintiff. This court reversed plaintiff's award for damages on the theory the so-called trade secret was actually not a secret. The court cited two important cases in this field: *Schulenburg v. Signatrol, Inc.* (1965), 33 Ill. 2d 379, 212 N.E.2d 865, *cert. denied* (1966), 383 U.S. 959, 16 L. Ed. 2d, 302, 86 S. Ct. 1225, and *Victor Chemical Works v. Iliff* (1921), 299 Ill. 532, 132 N.E. 806, as authority for this statement (*Bimba*, 119 Ill. App. 2d 251, 263):

> "A trade secret is a plan or process, tool, mechanism or compound know only to its owner and those of his employees to whom it is necessary to confide it."

The *Bimba* court cited other authorities for the statement, "A trade secret must be a secret in fact." (119 Ill. App. 2d 251, 264.) On the same page of its opinion the court then stated:

> "Matters of public knowledge or in the general domain of information in an industry cannot be a secret. One cannot market his goods, disclose how it is made, and yet call its methods of production a secret. [Citations.]"

We note also the United States District Court similarly held in a case involving application of Illinois law that a trade secret implies novelty and where the process or method is disclosed to other persons it cannot be claimed to remain a trade secret by the alleged owners. (*Wesley-Jessen, Inc. v. Reynolds* (N.D. Ill. 1974), 182 U.S.P.Q. 135.) This result was affirmed without opinion by the Court of Appeals. *Wesley-Jessen, Inc. v. Reynolds* (7th Cir. 1975), 521 F.2d 1402.

Plaintiff cites *Schulenburg v. Signatrol, Inc.* (1964), 50 Ill. App. 2d 402, 200 N.E.2d 615, modified in 33 Ill. 2d 379. The supreme court affirmed the decision of the trial court and the appellate court and held the information there involved was actually a trade secret which could not be taken advantage of by employees leaving the firm. In *Signatrol*, defendants admitted they had memorized certain plans of plaintiff and copied others. This information was then used by defendants in a violation of confidence. (33 Ill. 2d 379, 384, 387.) Although the case is thus factually different from the instant case, the *Signatrol* opinion is valuable for its definition of the term "trade secret" as above pointed out.

Plaintiff next cites *Goldberg v. Medtronic* (N.D. Ill. 1978), 203 U.S.P.Q. 233, and characterizes that decision as being almost identical to the instant case. We disagree. *Goldberg* involved a situation in which the

confidential relation between the parties was created and the trade secret was disclosed thereafter. Prior to that time there had been no other public disclosures of the secret, as in the case at bar.

Both parties refer to *Laff v. John O. Butler Co.* (1978), 64 Ill. App. 3d 603, 381 N.E.2d 423, *cert. denied* (1979), 444 U.S. 844, 62 L. Ed. 2d 57, 100 S. Ct. 88. The trial judge in the instant case noted that *Laff* was factually different from the present case. We agree. In *Laff*, plaintiff entered into an agreement whereby a formula was disclosed to defendant. In return defendant paid royalties to plaintiff. Both parties considered the formula a secret. An officer of defendant (Tarrson) testified he had never publicized the formula and the evidence showed "plaintiff has never made any disclosure of the formula other than to Tarrson." *Laff*, 64 Ill. App. 3d 603, 613.

Considering the facts before us, we find defendants have produced a mass of evidence showing the general disclosure of the device here in question. This appears strongly and clearly from the deposition of Gough, the three Luckow affidavits, the Hammerle deposition, and the deposition given by patentee Simmons. Plaintiff attempts to attack this mass of evidence by bringing out the fact that a family divorce may have alienated plaintiff and Gough; Luckow made his statement in three separate affidavits; and the use of the Wakitsch affidavit.

■█ However, in all fairness it must be conceded that the total net effect of all the matters produced by plaintiff has been an attempt to refute only a small portion of the strong case built by defendants to show complete public disclosure of the alleged secret. Even eliminating all the material plaintiff questions, large portions of the factual matters brought out by defendants stand unassailed and unrefuted. Since so many of the facts depended upon by defendants in their motion have not been contradicted by counteraffidavits, these facts must be taken as true. (*Nationwide Advertising Service, Inc. v. Kolar* (1975), 28 Ill. App. 3d 671, 675, 329 N.E.2d 300.) It follows necessarily that we have a situation before us in which there is no genuine issue as to any material fact.

■█ We accordingly, conclude the information pertaining to the manufacture and operation of the dental appliance here involved was generally disclosed by plaintiff prior to his disclosure to defendant of the information concerning the device. Thus, long prior to the dealing between the parties hereto, the secret, if there was one, had passed into the public domain. We conclude summary judgment was properly entered in favor of defendants and against plaintiff.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.